(100 South. 697)

No. 24402.

CHENET v. LIBBY & BLOUIN, Limited.

(March 31, 1924. Rehearing Denied by the Whole Court June 20, 1924.)

*(Syllabus by Editorial Staff.)*

1. Master and servant ⚖═6 — Overseer's employment held by the year and not by the month.

In suit to recover balance of yearly salary by overseer of plantation after wrongful discharge, evidence *held* to show that employment was by the year and not by the month as claimed by defendant, in view of Rev. Civ. Code art. 2050, entitling him under articles 2748, 2749, to salary for whole year, unless discharge was for good cause.

2. Master and servant ⚖═40(3)—Evidence held not to show ground for discharge of overseer.

In action by overseer to recover balance of salary for year after discharge, evidence *held* not to show good or sufficient ground for discharge.

Appeal from Twentieth Judicial District Court, Parish of Lafourche; H. M. Wallis, Jr., Judge.

Action by Alex Chenet against Libby & Blouin, Limited. Judgment for plaintiff, and defendant appeals. Affirmed.

Caillouet & Caillouet, of Thibodaux, for appellant.

Howell, Wortham & Bourg, of Thibodaux, for appellee.

By Division B, composed of Justices DAWKINS, LAND, and LECHE.

LECHE, J., of Division B, being absent on account of illness, Justice ROGERS, of Division A, heard the argument and took part in the decision in the case.

LAND, J. Plaintiff, alleging that he had been employed as field manager by defendant corporation for the year 1920, to oversee their Bush Grove plantation, situated in the parish of Lafourche, and that he was discharged on January 8th of that year, without just or sufficient cause, has instituted this suit to recover the sum of $2,035, the balance of his yearly salary, with 5 per cent. per annum interest from February 1, 1920, the sum due for the month of January, 1920, having been paid. Plaintiff avers that, under his contract of employment, he was to receive $1,500 in cash for the year's service, payable at the rate of $125 monthly, and was to be furnished a dwelling house, with yard,

garden plot, and outbuildings, such as chicken houses, barns, etc., for occupancy and use of himself and family, as well as feed for chickens and horses, and fuel for his household uses, free of any cost or charge to him, and that the value of these perquisites is not less than $60 per month, or $720 per annum, making his total compensation for the year not less than $2,220.

Defendant corporation denies in its answer that plaintiff was engaged by the year, but avers that his employment was by the month, at a salary of $125, and that, under the terms of the contract, either party was permitted to terminate the same on giving 30 days' notice. Respondent alleges that, in accordance with the terms of the contract of hiring, it gave notice to the plaintiff on January 8, 1920, that 30 days from said date his services would no longer be needed. Defendant admits that plaintiff continued in service until the 1st of February, 1920, when he moved from the plantation, having previously accepted payment of his monthly salary of $125 for January. The defendant corporation on January 8, 1920, through J. W. Libby gave to plaintiff the following notice:

"Mr. Alex Chenet—Dear Sir: This is to notify you that I wish to dispense with your services in 30 days from to-day."

On January 27, 1920, plaintiff addressed the following letter to J. W. Libby:

"Dear Sir: While I recognize your right to dismiss me from my service on Bush Grove Plant., I still retain my legal rights for my year's salary."

Defendant company gave no notice to plaintiff in November or December, 1919, that his services would be dispensed with during the year 1920. Libby, the representative of defendant company, and then in charge of its plantation, testifies that he made no arrangements with plaintiff as overseer for the year 1920. Plaintiff does not testify to any special agreement made with him in the year 1919 for the year 1920, but states that he has had a yearly verbal contract with defendant company since 1893, as overseer on their Bush Grove plantation, and that, without any special renewal of said contract, at the end of each year, said contract had been continued, and he had remained in the employment of defendant company until his discharge in January, 1920. Plaintiff testifies also that in the year 1917 or 1918 his wages were raised from $100 to $125 per month, and that he has received these wages each year since, and that they were paid monthly. Under this state of facts, it is idle for defendant company to deny that the contract of hiring for the year 1919 was not tacitly reconducted for the year 1920, as defendant company admits the existence of a contract for hiring in January, 1920, alleges the discharge of plaintiff under said contract and avers the payment to him of a salary of $125 during the month of January. The only disagreement between plaintiff and defendant company is as to whether this contract was by the year or by the month, and terminable on 30 days' notice; the plaintiff contending that the contract has always been by the year and the defendant asserting that it has always been by the month. Plaintiff testifies that the Bush Grove plantation produces, among other crops, sugar cane, and has a refinery located upon it. He states also that the handling of a sugar cane crop requires a period of 12 months, if not more. The overseeing of the planting, cultivation, cutting of the cane, etc., necessarily consumes the entire year. Contracts of hiring of this character, in the very nature of things, are yearly and not monthly. The law of this state has taken notice of the period of time required for raising a crop of sugar cane, and has declared that—

"A promise to make a crop of sugar is necessarily deferred, until the uncertain period when the cane shall be fit to cut." R. C. C. art. 2050.

[1] The very nature of plaintiff's employment is a corroboration of his testimony that his contract was by the year as an overseer on the plantation of defendant company. As plaintiff was sent away by the proprietor of the plantation on which he had contracted to serve, before the expiration of the time during which he had agreed to serve, he is entitled to recover the whole of the salary for the year 1920, which he would have been entitled to receive, had the full term of his services arrived; unless plaintiff was discharged by defendant company for good and just causes, as alleged in the alternative, in its answer, in the event the court should hold that plaintiff's employment as overseer was for the term of one year. R. C. C. arts. 2748, 2749.

[2] The defendant company charges this veteran overseer, after 26 years of continuous and, evidently, efficient service, with failure and refusal to guard and protect its interest by neglecting to remove the fence pickets belonging to said company, and thereby protect them from being broken and destroyed by falling trees felled by the Louisiana Cypress Company. Plaintiff is also charged by defendant company with not getting along well with the labor on the place, nor with small farmers of the neighborhood, who sold and delivered cane to the factory, thereby materially interfering with the proper management and operation of the place, by rendering it difficult to get necessary assistance at times.

The trial judge found that there was no just cause for plaintiff's discharge prior to the end of the year 1920 and that he was entitled to recover his salary and perquisites for the whole year, less the amounts received on account, aggregating the sum of $2,035, with legal interest from the 1st day of February, 1920, until paid.

Libby testifies that the Louisiana Cypress Company notified him the first time on January 3, 1920, to move the pickets. Plaintiff was instructed by Libby on January 5, 1920, to attend to this matter, and was discharged on January 6th. Plaintiff testified as follows:

"I had some men go there on the 6th [January]. It rained heavy that night. We were planting cane the day before, and I had four men to go out in the swamp and move those pickets. I had a man by the name of Foreman Anderson in charge of those men. I believe there were four. And the next day, I increased those men, I believe to six, which was the 7th, and on the 8th, I went back there myself with them, as Foreman Anderson reported to me that I was just throwing money away, that there was no way at all of getting those pickets, and that none of those pickets had been disturbed anyhow; they were all penned up as they had been when they were made. But I went back there myself, and I reported to Mr. Libby on the 8th, in the afternoon at his residence."

It is shown by plaintiff's testimony that certain families who were on the plantation when plaintiff first went there 26 years ago, still remained there; that others, born on the plantation during plaintiff's régime as overseer, had reared families, and were still there; and there had been no trouble on his part with the labor on the place. Plaintiff's testimony further shows that he had never disobeyed the orders given to him by Libby and that there had been no cause for friction between them.

The effort of Slocum, the successor of Chenet, to show that plaintiff did not get along harmoniously with the labor did not impress the trial judge, as plaintiff had managed the place for over a quarter of a century without any complaint on that score. Libby came to the conclusion that plaintiff was responsible for the sudden exodus of hands, who were plentiful at the beginning of the grinding season in 1919, although the cause of their leaving was unknown to him.

We fail to find in such testimony, or in the testimony of the other witnesses for de-

fendant company, any good or sufficient ground for the discharge of plaintiff in January, 1920.

The judgment appealed from is, therefore, affirmed, at the cost of the appellant.

Rehearing refused by the WHOLE COURT.